[Civ. No. 41588. First Dist., Div. Two. Dec. 19, 1978.]

BARRY ANDERSON, Plaintiff and Appellant, v.
SAN MATEO COMMUNITY COLLEGE DISTRICT et al.,
Defendants and Respondents.

442

**COUNSEL**

Van Bourg, Allen, Weinberg & Roger, Stewart Weinberg and Robert J. Bezemek for Plaintiff and Appellant.

Keith C. Sorenson, District Attorney, and Thomas F. Casey III, Assistant District Attorney, for Defendants and Respondents.

**OPINION**

**ROUSE, J.**—Plaintiff Barry Anderson appeals from a judgment of the San Mateo County Superior Court which denied him a writ of mandate to compel defendant San Mateo Community College District and its governing board (hereafter collectively referred to as the District) to reinstate him as a Contract I instructor and to take no further action against him except in compliance with the rules and regulations of the District promulgated under section 13346.15 of the Education Code.[1]

Following the issuance of an alternative writ of mandate, the District filed an answer and declarations in opposition to the petition. A hearing took place in January 1977, at which time the trial court concluded that it

---

[1] Unless otherwise indicated, all statutory references are to the Education Code, as it existed prior to the 1977 reorganization.

Former section 13346.15 is now section 87607 of the reorganized code.

lacked jurisdiction to review the decision of the District, based on section 13346.20.[2] Accordingly, the alternative writ was discharged and the petition for writ of mandate denied.

Thereafter, plaintiff filed proposed findings of fact and conclusions of law. At the hearing to consider the proposed findings and conclusions, the court determined that it did not have jurisdiction, and declined to adopt either the prepared findings of plaintiff or those submitted by the District. The final judgment was ordered to stand as of the date of the hearing. Plaintiff then filed this appeal.

Plaintiff was employed as a full-time instructor of respiratory therapy during the 1970-1971 school year by Skyline College of the District. He resigned at the end of that year and was rehired as a temporary employee in the spring of 1973. In 1974, he was hired as a probationary, or Contract I, employee for the 1974-1975 school year. For the fall semester, plaintiff was the instructor for three classes: respiratory therapy 52, respiratory therapy 54, and respiratory therapy 63.

Plaintiff's teaching performance was evaluated in the fall semester and was found to be deficient. Consequently, a decision was made by the District not to renew plaintiff's contract for the 1975-1976 college year. During the 1975-1976 school year, plaintiff became aware of a decision of the San Mateo County Superior Court in favor of Carolyn Ogletree, a similarly situated Contract I employee during the 1974-1975 school year whose termination had been found by the court to have been based upon an evaluation which was inadequate under the requirements of section 13346.15. Plaintiff then commenced this action, alleging that his termination was improper since his evaluation was likewise not carried out in compliance with the rules and regulations for evaluating employees as set forth by the District and as required by section 13346.15. More specifically, he alleged that the District's failure to reduce to writing the required evaluations and notifications, to meet certain deadlines, and to provide for his evaluation by all his classes, made the evaluation process upon which his dismissal was based inadequate under the District's own standards. District, on the other hand, asserted that plaintiff's evaluation was in substantial compliance with its own evaluation procedures.

Plaintiff's first argument on appeal is that the superior court has jurisdiction to determine whether the District has violated the Education

---

[2]Former section 13346.20 is now section 87608.

Code of the State of California or its own administrative rules and regulations.

Section 13346.15 requires that the following evaluation standards and procedures be observed by the District: "Before making a decision relating to the continued employment of a contract employee, the following requirements shall be satisfied:

"(a) The employee has been evaluated in accordance with the evaluation standards and procedures established in accordance with the provisions of Article 5.3 (commencing with Section 13480)[3] of this chapter, a fact determined solely by the·governing board. [¶] (b) The governing board has received statements of the most recent evaluations. [¶] (c) The governing board has received recommendations of the superintendent of the district and, if the employee is employed at a community college, the recommendations of the president of that community college. [¶] (d) The governing board has considered the statement of evaluation and the recommendations in a lawful meeting of the board." Plaintiff emphasizes the wording "*shall* be satisfied" in arguing that the intent of the Legislature was to insure strict compliance with this evaluation process. Plaintiff further points out that the standards and procedures devised by the District in accordance with section 13346.15, subdivision (a), can be enforced against the District by the employee. (*American Federation of Teachers* v. *Oakland Unified Sch. Dist.* (1967) 251 Cal.App.2d 91 [59 Cal.Rptr. 85].) Since the code section sets forth specific requirements for evaluating a probationary employee that were allegedly not met in the present case, plaintiff concludes that the superior court must have had jurisdiction to set aside the termination.

The District contends that the provisions of section 13346.15, when read in conjunction with those of section 13346.20, indicate that the Legislature intended termination of Contract I employees to be within the sole discretion of the District, subject to no judicial review.[4] The District claims that plaintiff's case falls squarely within the language of those sections, hence the question of the adequacy of his evaluation was within the exclusive province of the District and is not subject to judicial review.

---

[3]Former section 13480 is now section 87660.

[4]Section 13346.20 provides that "If a contract employee is working under his first contract, the governing board, at its discretion and not subject to judicial review except as expressly provided herein, shall elect one of the following alternatives: [¶] (a) Not enter into a contract for a second academic year. [¶] (b) Enter into a contract for a second

Thus we must decide whether the evaluation standards set forth in section 13346.15 are enforceable when noncompliance is claimed or whether section 13346.20 precludes the superior court from assuming jurisdiction.

■ As a threshold question, the court must ascertain the intent of the Legislature so as to effectuate the purpose of the law. To this end, the effect of legislation dealing with the benefits and obligations of probationary teachers, enacted in 1971, must be considered. (Stats. 1971, ch. 1654, p. 3558; Ed. Code, § 13345 et seq.)[5] This act granted regular or permanent employee status to community college teachers after two years (§ 13346.25).[6] However, the new legislation also provided that under section 13346.20, first-year teachers would no longer have the right to a hearing upon a decision not to renew their contracts. Companion legislation (i.e., The Stull Bill, Assem. Bill No. 293 (1971 Reg.Sess.); Stats. 1971, ch. 361, pp. 720-727) made articles 5 and 5.5 of the Education Code no longer applicable to employees of community colleges.

Thus it appears that the Legislature struck a balance between the teacher's need for employment security and the school board's need for flexibility. The successful teacher would achieve increased employment security in two years, while the school board would be able to "weed out" unsatisfactory first-year teachers in a streamlined manner since no hearing was required.

However, since the Legislature provided for neither a hearing procedure nor arbitration for instructors in plaintiff's position, it is reasonable to conclude that the Legislature intended that the standards for evaluation under section 13346.15 be observed with care. ■ In other words, we must assume that the Legislature recognized that, since an employee such as plaintiff cannot contest his nonrenewal in an adversary proceeding, the school district's decision that he is unfit to teach must be arrived at by means that will best insure the accuracy of this determination. An important corollary to this proposition is that the Legislature must also have recognized that the novice teacher would not benefit from the standards of section 13346.15 unless compliance with those standards was enforceable by law. Thus, the purpose and effect of the Stull

academic year. [¶] (c) Employ the contract employee as a regular employee for all subsequent academic years."

[5] Former section 13345 is now section 87600.

[6] Former section 13346.25 is now section 87609.

Bill leads us to conclude that denial of judicial review would effectively emasculate the provisions for evaluation of section 13346.15.

The relevant case law provides further grounds for our conclusion that the procedural protections of section 13346.15 are judicially enforceable. First, in accord with section 13346.15, the District adopted standards of evaluation and procedures for evaluation. As previously pointed out, such standards and procedures are normally enforceable by the employee. "Rules and regulations adopted by a board of education are, in effect, a part of a teacher's employment contract and the teacher is entitled to their enforcement. [Citations.] [¶] As stated by the trial court: 'Among the purposes of a Board of Education in adopting rules governing transfer of personnel is the obvious one of improving morale (and, consequently, the performance of teachers) by establishing fair procedures and criteria which minimize the risk of arbitrary or prejudiced decisions or decisions based on incomplete or inaccurate facts or misunderstandings.' " (*American Federation of Teachers* v. *Oakland Unified Sch. Dist., supra,* 251 Cal.App.2d at p. 97.) Similarly, the procedural protections of the Education Code itself are enforceable by the teacher. (*Pennel* v. *Pond Union School Dist.* (1973) 29 Cal.App.3d 832, 839 [105 Cal.Rptr. 817].)

It cannot be denied that sections 13346.15 and 13346.20 make clear the Legislature's intent that the courts not interfere in a school district's business of evaluating the performance of teachers. However, section 13346.15 is meaningless unless its specific provisions for evaluation procedure are enforceable. A balance must be struck between a teacher's need for employment security and a school district's need for flexibility. This balance can best be achieved by allowing a teacher who charges noncompliance with evaluation procedures recourse to judicial review of such procedures while continuing the present protection of a school district from judicial interference with the merits of a nonrenewal decision.

█ Even if this were not the case, it is unlikely that the Legislature can lawfully disallow recourse to an extraordinary writ such as the writ of mandate presently sought. In *Brock* v. *Superior Court* (1952) 109 Cal.App.2d 594, 601 [241 P.2d 283], the court discussed the nature of the writ:[7] " 'Historically, the writ of mandate was invented to provide a remedy where no other remedy existed. As is stated in 9 Halsbury's Laws

[7]Administrative mandamus under section 1094.5 of the Code of Civil Procedure would not be available in the present case, since that writ is only issued following a decision made as the result of a proceeding in which by law a hearing is required to be given.

of England, 744, section 1269, in speaking of the writ of *mandamus*: [¶] "Its purpose is to supply defects of justice; and accordingly it will issue, to the end that justice will be done, in all cases where there is a specific legal right and no specific legal remedy for enforcing such right." (See, also, 16 Cal.Jur. 764, sec. 4.)' (*Drummey* v. *State Board of Funeral Directors,* 13 Cal.2d 75, 82 [87 P.2d 848].)"

Section 1085 of the Code of Civil Procedure describes the function of the writ: "It may be issued by any court, except a municipal or justice court, to any inferior tribunal, corporation, board, or person . . . to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person." Here, as a probationary employee facing dismissal, plaintiff has a legal right to be evaluated in accordance with the District's rules and regulations in order that the conclusion that he is not competent to teach be based on accurate and articulable grounds. Further, he can be said to have been unlawfully precluded by the school district from the use and enjoyment of this right.

In *Poschman* v. *Dumke* (1973) 31 Cal.App.3d 932 [107 Cal.Rptr. 596], an assistant professor at a state college filed a petition seeking a writ of mandamus. He alleged that when a review panel appointed by the chancellor to hear his grievance concerning denial of tenure recommended that he be granted tenure, the chancellor wrongfully overruled the recommendation after the board of trustees had revoked prior procedures making the recommendations of the panel binding on all parties. The court stated: "Although appellant as a probationary academic employee may not have had an 'expectancy' of continued employment and no right not to be denied tenure [citation], he had, even under most minimal due process, a right to have his status determined in accordance with the valid rules and regulations established by the board of trustees or the administration on the local campus applicable thereto at the time. We agree that the delicate matter of tenure should be determined by the academic community and that courts should be reluctant to intervene. But where a determination is made in violation of its own established rules and regulations or under regulations that are invalid under statutes that bind the academic community . . ., it cannot be argued that no legal remedy exists." (P. 938.)

■ Plaintiff's second contention on appeal is that the judgment by the San Mateo County Superior Court in Ogletree, et al. v. San Mateo Community College District, et al., (No. 199404, entered May 7, 1976) is

binding on the superior court pursuant to the doctrine of res judicata and collateral estoppel.

Plaintiff claims that the requirements of collateral estoppel have been met so as to give the Ogletree judgment conclusive effect in the present controversy. These requirements are: (1) the issue decided in the prior adjudication must be identical to the issue presented in the action currently being litigated; (2) there must have been a final judgment on the merits of the previous action; and (3) the party against whom the plea is asserted must have been a party or in privity with the party to the prior adjudicatory action. (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 813 [122 P.2d 897]; *Mulrooney* v. *Employers Reinsurance Corp.* (1969) 1 Cal.App.3d 942, 945 [81 Cal.Rptr. 907].)

In *Ashe* v. *Swenson* (1970) 397 U.S. 436, 443 [25 L.Ed.2d 469, 475, 90 S.Ct. 1189], the United States Supreme Court stated that collateral estoppel means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated . . . ." In this state, the policy behind collateral estoppel is articulated by the California Supreme Court in the case of *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 605 [25 Cal.Rptr. 559, 375 P.2d 439]: " 'The rule is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy.' [Citation.] 'This policy must be considered together with the policy that a party shall not be deprived of a fair adversary proceeding in which fully to present his case.' [Citation.]"

We hold that the doctrine of collateral estoppel is not applicable in this instance, since it is evident that the present fact situation does not meet the requirement that the issue previously adjudicated be identical to the issue at hand. Here, plaintiff attempts to benefit from the Ogletree decision although the omissions and procedural errors which were involved there are different from those alleged by plaintiff. It is our view that the only issue which is subject to judicial review is whether plaintiff was evaluated in accordance with the rules and regulations of the District. At this point, it has not been established that plaintiff's evaluation was in fact procedurally defective. Only if plaintiff is able to persuade the superior court that he has been denied the procedural due process of an adequate evaluation will he be entitled to relief. Since the operative facts concerning the evaluation of a probationary employee will vary from case to case, it is obvious that the conclusion that there was improper

evaluation in one case will not necessarily determine the outcome of another case.

To decide otherwise would be to limit litigation at the expense of the defendant's right "not [to] be deprived of a fair adversary proceeding . . . ." (*Jorgensen* v. *Jorgensen* (1948) 32 Cal.2d 13, 18 [193 P.2d 728].) It is clear that the District may not be deprived of the opportunity to contest a charge of failure to evaluate which may be frivolous or misleading.

Finally, at oral argument, the District pointed out that Senate Bill No. 696, as originally introduced on June 16, 1971, contained proposed section 13346.35, which provided that: "The decision of the governing board shall not be subject to judicial review, except on an issue that the procedural requirements of the statutes, the rules and regulations of the Board of Governors of the California Community Colleges or the local district governing board were not satisfied." (Sen. Bill No. 696 (1971 Reg. Sess.).) This entire section was subsequently deleted, and was not a part of the bill when it was enacted.

It is the District's view that, by deleting the provisions of proposed section 13346.35, the Legislature manifested its clear intent not to permit a judicial review of the issue raised by plaintiff in this case, i.e., whether a local community college district governing board has complied with its own procedural requirements. The District cites several cases in support of its position. However, we believe that those cases must be distinguished from the case at bar. In this instance, unlike the cases cited, there is no extrinsic evidence to suggest that, by deleting proposed section 13346.35, the Legislature intended to prohibit judicial review of alleged procedural deficiencies in a governing board's decision. Such a purpose, in our view, would raise serious constitutional questions of due process.

We cannot quarrel with the District's position that, under the applicable statutes, plaintiff is not entitled to look behind the District's decision by way of judicial review. However, we reject the argument that the Legislature intended to prohibit a probationary teacher from having access to a judicial forum for the limited purpose of challenging a governing board's compliance with its own regulations. Such a restriction would contravene long standing policies concerning the right to judicial review and, as previously indicated, would undoubtedly be constitutionally impermissible.

If the terms of a statute are, by fair and reasonable interpretation, capable of a meaning consistent with the requirements of the Constitution, then the statute will be given that meaning, rather than another which is in conflict with the Constitution. (*Braxton* v. *Municipal Court* (1973) 10 Cal.3d 138, 145 [109 Cal.Rptr. 897, 514 P.2d 697].) We believe that the foregoing analysis lends itself to a warm compatability with the principles of due process. Thus we conclude that the trial court has jurisdiction of this matter for a very limited purpose.

Accordingly, the judgment is reversed and the case is remanded to the trial court for the sole determination of whether plaintiff was evaluated in accordance with the rules and regulations of the District and the Education Code.

Taylor, P. J., and Kane, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied February 14, 1979.