[No. B010852. Second Dist., Div. Seven. May 17, 1985.]

MARY ANNA MILLER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CITY OF LOS ANGELES, Real Party in Interest.

**COUNSEL**

Hoffman, Slatter & Slatter and Vann H. Slatter for Petitioner.

No appearance for Respondent.

Gary R. Netzer, City Attorney, John T. Neville, Senior Assistant City Attorney, Richard M. Helgeson, Assistant City Attorney, Flora Trostler and Katherine J. Hamilton, Deputy City Attorneys, for Real Party in Interest.

**OPINION**

**LILLIE, P. J.**—Petitioner, plaintiff in a civil action for damages against one Schroyer and City of Los Angeles (City), real party in interest herein, has petitioned this court for writ of mandate directed to the superior court to vacate (1) order denying her motion for summary judgment and (2) order granting City's motion for severance of its action from that against Schroyer.

## I

### PRELIMINARY PROCEDURAL STATEMENT

Petitioner alleged in her complaint that on October 3, 1981, after stopping her vehicle, Sergeant Leigh B. Schroyer, Los Angeles Police Department, in uniform and on duty, administered to her a sobriety test, took her keys, ordered her into his official police vehicle, took her home, unlocked the door, entered her home and forcibly raped her. A jury found Schroyer guilty of forcible rape on June 18, 1982, and the judgment is now final. Thereaf-

ter, petitioner filed her complaint for damages arising out of the rape—one cause of action against Schroyer alone, the remaining five (negligence, assault and battery, false imprisonment, and intentional and negligent infliction of emotional distress) against City predicated upon its direct negligence in hiring, supervision, entrustment and continued employment of Schroyer, and on vicarious liability.

On November 13, 1984, City moved to sever the case against it from that against Schroyer on the ground that his criminal conviction is not admissible against it, and it has the right to litigate the issue of rape. The court, stating that "the conviction of Schroyer probably will not be admissible in the trial against the City," granted the motion "with leave to plaintiff to move to reconsolidate if plaintiff is prepared to represent that the criminal conviction will not be so offered against the city." Petitioner sought clarification of the order, and on December 21, 1984, the court ordered[1] the last three words ["against the city"] of the November 13 minute order stricken. On January 10, 1985, petitioner moved for summary judgment to establish the rape "on the ground that Defendant City is collaterally estopped from relitigating the issue of rape in any joint trial of MILLER v. CITY OF LOS ANGELES and LEIGH B. SCHROYER." The motion was denied.

## II

### WRIT OF MANDATE PROPER REMEDY

After review of petition and answer to petition we issued alternative writ of mandate, having concluded that the issue before us is one of first impression and of general interest and importance to the bench and bar. Upon consideration of all of the briefs, points and authorities and oral argument, we conclude that the criminal conviction of Schroyer is relevant and admissible against both Schroyer and City thus it appears there would be no undue prejudice to City in a joint trial; and that City is precluded under the doctrine of collateral estoppel from relitigating the issue of rape and the criminal conviction is a conclusive determination of the fact of forcible rape. ■ We order writ of mandate to issue directing the superior court to vacate its orders granting City's motion to sever, and to vacate its order denying plaintiff's motion for summary judgment and make an order granting said motion in accordance with the views expressed herein. A writ of mandate is an appropriate method to require the trial court to enter summary judg-

---

[1]In the minute order the court stated its "intention, as reflected in the severance, was that because plaintiff stated in oral argument that she intended to offer the criminal conviction of Schroyer in evidence against the city, and because the court feels that the evidence is not admissible against the city but is against Schroyer, any prejudice to the city would be eliminated by severing the two defendants."

ment in plaintiff's favor. (*Krasley* v. *Superior Court* (1980) 101 Cal.App.3d 425, 427-428 [161 Cal.Rptr. 629].)

## III

### JUDGMENT OF FELONY CONVICTION RELEVANT AND ADMISSIBLE

A final judgment of conviction of a crime is admissible as an exception to the hearsay rule to prove any fact essential to the judgment, if the crime is punishable as a felony, the conviction is not based upon a plea of nolo contendere and the judgment is offered in a civil case. (Evid. Code, § 1300; *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 879 [151 Cal.Rptr. 285, 587 P.2d 1098]; *Atlas Assurance Co.* v. *McCombs Corp.* (1983) 146 Cal.App.3d 135, 145, fn. 5 [194 Cal.Rptr. 66]; *Mize* v. *Reserve Ins. Co.* (1975) 48 Cal.App.3d 487, 491, fn. 2 [121 Cal.Rptr. 848].) "The theory of trustworthiness for this hearsay exception is that since the exception is limited to judgments of felony convictions, the issues of guilt and innocence will have been thoroughly litigated with the stringent burden of proof required of conviction beyond a reasonable doubt." (1 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 9.1, p. 312.)

## IV

### CRIMINAL CONVICTION CONCLUSIVE DETERMINATION OF FACT OF FORCIBLE RAPE

The principles of collateral estoppel mandate that any issue necessarily decided by a court of competent jurisdiction in a criminal proceeding is conclusively determined as to the parties or their privies if it is involved in a subsequent civil action.

The Supreme Court in *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807 [122 P.2d 892], formulated three questions as pertinent in determining the applicability of collateral estoppel in a given case: "Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? [Citations.]" (P. 813; *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439]; *Dillard* v. *McKnight* (1949) 34 Cal.2d 209, 214 [209 P.2d 387, 11 A.L.R.2d 835].)

The rape of petitioner is the critical issue upon which her civil action against Schroyer and City is predicated. The issue of rape decided by a jury

in the prior criminal case of People of the State of California v. Schroyer, Superior Court No. A374237, is identical with the issue herein presented. The criminal conviction was a final adjudication of this issue on the merits, the judgment having been affirmed on appeal (*People* v. *Schroyer,* 2 Crim. No. 43012) on January 6, 1984; remittitur issued April 6, 1984. The issue that City herein wishes to relitigate is twofold—whether the act of intercourse took place and, if so, whether it was with the consent of petitioner. Those identical issues were necessarily decided by the jury in finding Schroyer guilty of forcible rape.[2]

█ The remaining issue is whether City was in privity with a party to the prior criminal proceeding.[3] No one claims that City was a party thereto nor is there any question that Schroyer is estopped from relitigating the rape issue. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d 601, 605-606; *People* ex rel. *State of Cal.* v. *Drinkhouse* (1970) 4 Cal.App.3d 931, 938 [84 Cal.Rptr. 773]; *Newman* v. *Larsen* (1964) 225 Cal.App.2d 22, 24-25 [36 Cal.Rptr. 883].) Pointing up the safeguards against unjust conviction, i.e., proof beyond a reasonable doubt, unanimous verdict, right to counsel, record paid for by the state on appeal, the court in *Teitelbaum* said, "Stability of judgments and expeditious trials are served and no injustice done, when criminal defendants are estopped from relitigating issues determined in conformity with these safeguards." (P. 606.) The safeguards which estop Schroyer from relitigating the rape issue are those which also estop one who was in privity with him in the criminal case. Any issue necessarily decided in a primary criminal prosecution is conclusively determined as to the parties or their privies if it is involved in a subsequent civil action.

Thus it is surprising that City in its argument in effect allies itself with Schroyer in the criminal case at the same time eschewing any privity with Schroyer, citing various conflicting interests. (*Carden* v. *Otto* (1974) 37 Cal.App.3d 887, 892 [112 Cal.Rptr. 749].) █ City contends it did not have its day in court in the criminal case inasmuch as it could not represent Schroyer therein and participate in the criminal trial. It argues that it could not control or conduct the defense of Schroyer, call him to testify (Schroyer had a constitutional right against self-incrimination) and show by his testimony that petitioner consented to the act of intercourse. The obvious weakness in this argument caused the same to be rejected in *Teitelbaum Furs,*

---

[2]We take judicial notice of the record in and the opinion of the Court of Appeal in *People* v. *Schroyer,* 2 Crim. No. 43012. (§ 452, subd. (d), Evid. Code.)

[3]On motion for summary judgment, the trial court denied the same on a ground other than lack of privity in the context presented, a ground which all parties appear to concede, and we deem to be inapplicable here. However, we note that when asked if otherwise, collateral estoppel may apply, the judge responded, "I am saying it is possible."

*Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d 601, 607; *People* ex rel. *State of Cal.* v. *Drinkhouse, supra,* 4 Cal.App.3d 931, 938; and *People* v. *One 1964 Chevrolet Corvette Convertible* (1969) 274 Cal.App.2d 720 [79 Cal.Rptr. 447]. The reasons cited by the court in those cases are the same here. Schroyer, exercising his constitutional right, chose not to testify; his election presumably was made on the assumption he would benefit by not taking the stand. Schroyer knew the true facts, knew what had transpired between himself and petitioner, and preferred to take his chances for acquittal on the testimony of his character witnesses that he was known as a nonviolent person, and a statement to a psychiatrist that petitioner had consented to the act. As stated in this court's opinion affirming Schroyer's conviction (*People* v. *Schroyer,* 2 Crim. No. 43012, p. 17), his defense conceded "the fact of intercourse but under the theory that the act was engaged in voluntarily." Schroyer was represented by competent private counsel and afforded every opportunity to litigate the issue of guilt, and the cause was tried to a jury. Since he was charged with a felony punishable in state prison, he had every motive to make as vigorous and effective a defense as possible. After all, his position as a police officer for the City, his pension, his reputation and his freedom were at stake.

The real issue lies in petitioner's contention that City was in privity with the People of the State of California, plaintiff in the criminal prosecution, because of a "commonality of interest" and an "identity of interest" between them.

■ Privity is a concept not readily susceptible of uniform definition. (*Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d 865, 875.) It "is essentially a shorthand statement that collateral estoppel is to be applied in a given case; there is no universally applicable definition of privity. [Citations.]" (*Lynch* v. *Glass* (1975) 44 Cal.App.3d 943, 947 [119 Cal.Rptr. 139].) The concept has been expanded to refer to such an identification in interest of one person with another as to represent the same legal rights (*Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d 865, 875; *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d 601, 604; *Zaragosa* v. *Craven* (1949) 33 Cal.2d 315, 318 [202 P.2d 73, 6 A.L.R.2d 461]); and the modern concept includes a nonparty " 'sufficiently close' " to the original case to justify application of the doctrine of collateral estoppel (*Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d 865, 875; *Lynch* v. *Glass, supra,* 44 Cal.App.3d 943, 947; *People* ex rel. *State of Cal.* v. *Drinkhouse, supra,* 4 Cal.App.3d 931, 939; *People* v. *One 1964 Chevrolet Corvette Convertible, supra,* 274 Cal.App.2d 720, 731), a "substantial identity" between the parties (see 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 222, p. 3357) and "identity of interests" (*People* v. *Washington* (1982) 131 Cal.App.3d 434, 438 [186 Cal.Rptr. 3]).

When their community of interest, substantial identity of interests and City's closeness to the criminal case are considered in the context of its responsibilities to the public, we think it clear that City was in privity with the People of the State of California. The interest of City was identical to that of the People of the State of California in prosecuting Schroyer, and was successfully represented by the People in that case. Try as it may, City cannot divorce itself from the People in this context unless it wishes to deny on the record that it has an interest in obtaining a conviction of rape committed by one of its police officers while in the line of duty. Its interest in prosecuting Schroyer was every bit as strong as that of the People of the State of California. Schroyer was prosecuted for a felony by the district attorney representing the People of the State of California as plaintiff; had the offense been a misdemeanor the city attorney would have represented plaintiff therein. But whether it be the city attorney or the district attorney who pursues the conviction, each has goals which are the same—to seek justice on behalf of the People. However, the City's interest in seeing that such an offender is prosecuted goes far and beyond that necessarily held by the average citizen. Its interest, which City cavils in its briefs, was to see that a police officer for the City serving the People of Los Angeles, who is charged with commission of a serious felony while on duty, is brought to the bar of justice and, if found guilty, to assure that he can no longer prey on members of the public in his official capacity and is relieved of all law enforcement duties for the City for the protection of the People in the community whom the police serve. City has the responsibility of maintaining an efficient and law-abiding police force; thus it is as interested as the People of the State of California in concerning itself with a City police officer who took advantage of and breached a substantial public trust.

■ "However, to maintain the stability of judgments, insure expeditious trials, prevent ' "vexatious litigation with its attendant expense both to the parties and to the public" ' (*O'Connor* v. *O'Leary*, 247 Cal.App.2d 646, 650 [56 Cal.Rptr. 1]) and to serve the ends of justice, more and more our courts are striving to give effect to judgments by extending 'privies' beyond the classical description and include relationships not originally embraced therein. [Citations.]" (*People* v. *One 1964 Chevrolet Corvette Convertible, supra,* 274 Cal.App.2d 720, 731, fn. omitted [owner of car in forfeiture proceeding precluded from relitigating issue of knowing possession of narcotic by user of vehicle convicted thereof in prior criminal case]; *People* ex rel. *State of Cal.* v. *Drinkhouse, supra,* 4 Cal.App.3d 931, 937.) The court in *Drinkhouse,* citing *One 1964 Chevrolet Corvette Convertible,* said, "The emphasis is not on a concept of identity of parties, but on the practical situation. The question is whether the non-party is sufficiently close to the original case to afford application of the principle of preclusion. (*People* v. *One 1964 Chevrolet Corvette Convertible, supra,* at pp. 731-732; Vestal,

*Preclusion/Res Judicata Variables: Parties,* 50 Iowa L.Rev. 27, 45.)"
(P. 937; see also *Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d
865, 875; *Lynch* v. *Glass, supra,* 44 Cal.App.3d 943, 947.)

The modern view is stated in *Lynch* v. *Glass, supra,* 44 Cal.App.3d 943,
at pages 947-948: "Three factors may favor the application of collateral
estoppel in a given case even though precise identity of parties and issues
may be lacking. The principle may be invoked to protect against vexatious
litigation [citations], to further the finality of litigation in which public in-
terests are involved [citations], or to promote the stability of adjudications
in prior criminal actions [citations]. . . . The circumstances must also have
been such that the nonparty should reasonably have expected to be bound
by the prior adjudication."[4] Finally, in *Clemmer* v. *Hartford Insurance Co.,
supra,* 22 Cal.3d 865, the Supreme Court said, "Thus, in deciding whether
to apply collateral estoppel, the court must balance the rights of the party
to be estopped against the need for applying collateral estoppel in the par-
ticular case, in order to promote judicial economy by minimizing repetitive
litigation, to prevent inconsistent judgments which undermine the integrity
of the judicial system, or to protect against vexatious litigation. [Cita-
tions.]" (P. 875.)

We have found the issue of rape, finally decided in the prior
criminal case, to be identical with the rape issue presented in the instant
civil litigation, and that City, against which collateral estoppel is asserted,
was in privity with the People of the State of California, party plaintiff to
the prior criminal case. But in addition, considerations of public policy,
principles of equity, established precedent, finality of criminal adjudications
and a balancing of the rights of City against the need for precluding City
from relitigating the issue of rape, impel us to the conclusion that City is
precluded from retrying the essential issue of rape. The need for applying
the principle of preclusion against City is reflected in a variety of circum-
stances. If the actions were severed, repetitive litigation would result, for
two trials arising out of the same facts would be required; in a joint trial,
to allow City to relitigate the rape issue would not only result in a waste of
judicial time and resources, but permit vexatious litigation by again expos-
ing petitioner to a retrial of the rape issue with its attendant humiliation and
expense both to the parties and to the public. Further, in the sense that the
interest in prosecuting Schroyer was not only to bring a police officer who
had breached a substantial public trust to justice but to protect other mem-

---

[4]City surely expected to rely on the prior criminal adjudication of rape, and no doubt did
so as the basis of proceedings brought by it to remove Schroyer from the police department.
In doing so, City took the benefit of the criminal judgment.

bers of the public from any future illegal conduct while on duty, we, as in *Drinkhouse* [there the public interest was the validity of deeds to land], are "dealing with a *public interest*" (p. 938, original italics), i.e., a public trust, the integrity of a police force that serves a large city and the protection the members of the public have a right to expect which in *Drinkhouse* justified invocation of collateral estoppel to further final litigation in which public interests are concerned. But the area of most of our concern lies in the necessity for stability of adjudications in prior criminal actions. If City is permitted to challenge the critical fact of Schroyer's rape of petitioner, and if by reason of failure of proof or otherwise on the part of petitioner the fact was not proved, several anomalies unsettling to public confidence in the judicial process would appear. First, there would be presented the repugnancy that a police officer would have been convicted, jailed and removed from office for forcible sexual conduct which in a civil suit would be found not to have occurred. Second, not only would inconsistent judgments threaten public confidence in our judicial system and undermine the integrity of our system of justice but would have a devastating effect on Schroyer's concept of justice as he serves out his term in state prison, suffers removal from office and possible denial of pension, not to mention loss of reputation.

## V

### SUMMARY JUDGMENT

■ Because the only issue raised on the motion for summary judgment (motion for partial summary judgment) was the fact of rape of petitioner by Schroyer, and because as a matter of law Schroyer and City are estopped in this subsequent civil action to relitigate the issue of rape which had been finally and conclusively determined by a prior criminal action, no triable issue of material fact was presented on the issue, and summary judgment on the issue of rape was proper; on that issue the motion should have been granted.

## VI

### DISPOSITION

Let a writ of mandate issue directing respondent superior court to vacate its orders granting motion to sever and vacate its order denying motion for

summary judgment and enter summary judgment in plaintiff's favor and against both defendants conclusively establishing the fact of rape.

Thompson, J., and Johnson, J., concurred.

A petition for a rehearing was denied June 5, 1985, and the petition of real party in interest for review by the Supreme Court was denied August 15, 1985. Kaus, J., was of the opinion that the petition should be granted.